UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA WELLS, | No. 2:15-cv-00791 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Petitioner seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI")[1] under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381-1383f.  For the reasons that follow, plaintiff's motion for summary judgment will be denied and defendant's cross-motion for summary judgment will be granted.

I.   PROCEDURAL BACKGROUND

Plaintiff initially applied for SSI on September 1, 2011 alleging her disability began on

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ( Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels).

1

that date. Administrative Record[2] ("AR) at 13 (ECF No.13-3 at 14). The claim was initially denied on December 20, 2011, and on reconsideration on September 18, 2012. Id. Plaintiff then filed a request for hearing on October 18, 2012. 20 CFR 416.1429 et seq. Id. Administrative Law Judge ("ALJ") Nancy Lisewski presided over a hearing on May 12, 2014 attended by plaintiff's attorney and Impartial Vocational Expert ("IVE") Thomas G. Linvill, who testified. AR 31-32 (ECF No. 13-3 at 32-33). Plaintiff testified by telephone after waiving the notice of hearing. AR 13 (ECF No. 13-3 at 14).

Originally the plaintiff had applied for Disability Insurance Benefits ("DIB") as well as SSI. She alleged the onset of her disability for DIB purposes was December 31, 2010. Administrative Record ("AR") 185 (ECF No. 13-6 at 2). However, earnings reports showed that plaintiff had earnings through 2012, AR 201-207 (ECF No. 13-6 at 18-24). Ultimately the ALJ determined that plaintiff was eligible for SSI from January 1, 2013. AR 13 (ECF No. 13-3 at 14). Plaintiff does not contest these findings.

On May 21, 2014, ALJ Lisewski found plaintiff "not disabled" and plaintiff requested review by the Appeals Council, AR 8 (ECF No. 11-3 at 9), which request was denied on January 28, 2015. AR 1 (ECF No. 13-3 at 2). Plaintiff filed her complaint in this court on April 11, 2015. ECF No. 1. The parties consented to the jurisdiction of the Magistrate Judge. ECF Nos. 9 (plaintiff) and 7 (defendant). The cross-motions for summary judgment based upon the Administrative Record filed by the Commissioner have been fully briefed. ECF No. 15 (plaintiff's motion for summary judgment), ECF No. 16 (defendant's cross-motion for summary judgment), and ECF No. 19 (plaintiff's reply memorandum).

II.   FACTUAL BACKGROUND

Plaintiff was born in 1976 and thus was under fifty years of age at all relevant times. ECF No. 15 at AR 20 (ECF No. 13-3 at 21). She has at least a high school education and can communicate in English. Id.

---

[2] The Administrative Record, comprising 523 pages was filed in ten (10) parts and is found at ECF No. 13.

### III.   LEGAL STANDARDS

The Commissioner's decision that a plaintiff is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 406(g)).

Substantial evidence is "more than a mere scintilla [but] may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotation omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 95 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.")

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massnari, 253 F.3d 1152, 1156 (9th Cir. 2001). Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an 'ALJ's error was inconsequential to the ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2005) (quoting Stout v. Comm'r, 454 F.3d 1050-1056 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.   RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every individual who is "disabled." 42 U.S.C. §§ 423(d)(1)(A), 1382a(3)(A). The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation steps.

> Step one: Is the plaintiff engaging in substantial gainful activity? If so, the plaintiff is not disabled. If not proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the plaintiff have a "severe" impairment? If so, proceed to step three. If not, the plaintiff is not disabled.

Id. §§ 404.1520(a)(4)(v), (g)

> Step three: Does the plaintiff's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1? If so, plaintiff is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the plaintiff's residual functional capacity make him capable of performing his past work? If so, the plaintiff is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the plaintiff have the residual functional capacity to perform any other work? If so, the plaintiff is not disabled. If not, the plaintiff is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The plaintiff bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 20 C.F.R. § 416.912(a) (same). However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the plaintiff is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012).

## V.   THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. [Step One]  The claimant engaged in substantial gainful activity during the following periods: throughout 2011 and 2012 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*). […]

3. [Step One, continued] However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity, i.e. from January 1, 2013.

4. [Step Two]  The claimant has the following severe impairments: asthma, chronic obstructive pulmonary disorder, hypertension, diabetes mellitus type II, degenerative disk disease of the lumbar spine, and obesity.  (20 CFR 404.1520(c) and 416.920(c)). […]

5. [Step Three]  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404-1525, 404.1526, 416 920(d), 416.925 And 416.926). […]

6. [Residual Functional Capacity ("RFC")]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  The claimant can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently.  She can sit and/or walk for six hours in an eight hour work day.  She can sit six hours in an eight hour work day.  She can frequently climb ramps, stairs, ladders, ropes, or scaffolds.  She can frequently balance, stoop, kneel, crouch or crawl.  She must avoid concentrated exposure to workplace hazards and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. […]

       7. [Step Four] The claimant is capable of performing past relevant work as a care giver. This work does not require the performance of work related activities precluded by the plaintiff's residual functional capacity (20 CFR 404.1565 and 416.965). […][3]

       8. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2010, through the date of this decision (20 CFR 401.1520(f) and 416.920(f).

AR 12- 26 (ECF No. 13-3 at 12-27) (excerpted).

## VI.  ANALYSIS

Plaintiff seeks summary judgment on the sole ground that the ALJ improperly found plaintiff's mental limitations to be nonsevere at Step Two of the sequential analysis, in disregard of Dr. Azevedo's opinion.

### A. Step Two of the Sequential Evaluation Process

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 153 (1987). At Step Two the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p). The Step Two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a

---

[3] The ALJ noted that although the claimant is capable of past relevant work, which requires a finding of non-disability and obviates the need for Step Five findings, there are other jobs that she is also able to perform. The ALJ therefore made the following alternative Step Five findings: (1) the claimant was born on December 22, 1967 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (2) the claimant has at least a high school education and is able to communicate in English; (3) transferability of job skills is not an issue in this case because the claimant's past relevant work was unskilled; and (4) considering the plaintiff's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the plaintiff can also perform. AR 24 (ECF No. 13-3 at 25).

1  finding that a claimant is severe at step two only raises a prima facie case of a disability." Hoopai
2  v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

3  At the Second Step, plaintiff has the burden of providing medical evidence of signs,
4  symptoms, and laboratory findings that show that his or her impairments are severe and are
5  expected to last for a continuous period of twelve months. Ukolov v. Barnhart, 420 F.3d 1002,
6  1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909,
7  416.920(a)(4)(ii). An ALJ's finding that a claimant is not disabled at Step Two will be upheld
8  where "there are no medical signs or laboratory findings to substantiate the existence of medically
9  determinable physical or mental impairment." Ukolov, 420 F.3d at 1005.

10 If the ALJ determines that the claimant does have a medically determinable mental
11 impairment, he then rates the degree of the claimant's functional limitations in four areas, known
12 as the "Paragraph B Criteria": (1) activities of daily living; (2) social functioning; (3)
13 concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §
14 404.1520a(b)-(c); see also Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. In the first three
15 areas, the ALJ rates the limitations as either none, mild, moderate, marked, or extreme. The
16 fourth functional area, episodes of decompensation, is rated on a four point scale of none, one or
17 two, three, and four or more. 20 C.F.R. 404.1520a(c)(3) and (4)).

18 If a severe impairment exists, all medically determinable impairments must be considered
19 in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523. The ALJ "must consider
20 the combined effect of all of the claimant's impairments on her ability to function, without regard
21 to whether each alone [i]s sufficiently severe." Smolen, 80 F.3d at 1290; 20 C.F.R. § 404.1523.
22 Accordingly, the erroneous failure to find an impairment severe at Step Two will constitute
23 harmless error if the ALJ finds other severe impairments, and goes on to consider the non-severe
24 impairments at subsequent steps. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

25   B.  The Mental Health Evidence

26 Plaintiff was assessed by two consultative mental health examiners, Drs. Amy Ahlfield
27 and Timothy Canty, prior to the hearing before the ALJ. Following the hearing, the ALJ ordered
28 ////

7

1  a third examination to include psychometric testing of the plaintiff's cognitive ability.  Dr. Jose
2  Azevedo conducted that evaluation.

3        1.   Opinion of Amy Ahlfield, Psy.D.

4       Dr. Ahlfield examined plaintiff on January 24, 2012.  AR 318 (ECF No. 13-8 at 14).  She
5  reported that plaintiff wore a hood over her head throughout the examination, had poor eye
6  contact, rocked, and often laughed.  Id.  Plaintiff told Dr. Ahlfield that she took care of her own
7  hygiene, although her roommate did the cooking, that she was active in raising her 4 and 7 year
8  old children with the help of her roommate, and that she napped throughout the day.  Plaintiff also
9  told this examiner that she had stopped working as an in-home care provider in 2010 because
10 "she was 'stressed out' and could not do it any more."  AR 320 (ECF No. 13-8 at 16).

11      Plaintiff performed extremely poorly on a mental status exam,[4] and Dr. Ahlfield suspected
12 she was exaggerating her level of impairment.  Dr. Ahlfield also noted incongruity between
13 plaintiff's stated mood (depressed) and her affect (inappropriate laughter).  AR 319-320 (ECF No.
14 13-8 at 15-16).  In the discussion/prognosis section of her report, Dr. Ahlfield stated that it was
15 "*possible* that [plaintiff] is honestly depicting her symptoms," however "some of her presentation
16 throughout the interview and in particular, the incongruity between her affect and her presenting
17 mood made this interviewer question whether or not she was exaggerating her symptoms and
18 being dishonest in her representation of the facts and symptoms."  AR 322 (ECF No. 13-8 at 18)
19 (emphasis added).  She also noted that plaintiff's report of her own symptoms indicated a degree
20 of debilitation inconsistent with her reported activities of daily living (specifically, her care for
21 her children).  Id.

22      Nonetheless, based primarily on plaintiff's historical representations and her performance
23 during the tasks, Dr. Ahlfield diagnosed PTSD and assigned a GAF score[5] of 60.  AR 321-322

---

[4] Plaintiff, who reported completing two years of college, could not multiply 5 x 8, correctly calculate the number of quarters in $1.75, spell the word "world" either forward or backward, or perform a simple three-step command, and "gave up" when asked to explain simple proverbs. AR 321 (ECF No. 13-8 at 17).  Dr. Ahlfield found this performance "highly unusual" and "odd" in the absence of psychotic symptoms.  AR 322 (ECF No. 13-3 at 18).

[5] The Ninth Circuit has defined a GAF score as a "rough estimate" of an individual's
(continued…)

(ECF 13-8 at 17-18). Her functional assessment (again apparently assuming the accuracy of plaintiff's presentation) was that plaintiff was not capable of performing even simple and repetitive tasks on a regular basis, would have difficulty working with others, and appeared unable to handle routine stressors. AR 322 (ECF 13-8 at 18).

### 2. Opinion of Timothy Canty, M.D.

Dr. Canty examined plaintiff on November 19, 2012. AR 399-402 (ECF No. 13-8 at 95-98). He found that plaintiff's responses on the cognitive portion of the examination "were not credible." AR 400 (ECF. No. 13-8 at 96). For instance, plaintiff didn't know the date, month or year, and when the doctor mentioned a major holiday in 3 days she claimed not to know what holiday he was referring to; she couldn't recall even two digits forward; she could recall none of 3 objects after 1 minute; she could not identify the current president; said a bus was bigger than a bicycle and a cat bigger than a horse; and in response to what 1 + 3 equals she responded "I don't keep up with things like that." AR 401 (ECF No. 13-8 at 97). Dr. Canty also questioned plaintiff's veracity because she stated her children had been removed from her custody but couldn't explained why, and claimed she had completed all CPS mandates but was allowed only one supervised visit with her children each week, which he found to be internally inconsistent representations. AR 402 (ECF No. 13-8 at 13). His diagnosis was "malingering," AR 401 (ECF No. 13-8 at 97), which led him to the following functional assessment: "[Plaintiff's] functional status is unknown. She appears to be malingering." AR 402 (ECF No. 13-8 at 98).

### 3. Opinion of Jose Azevedo, Ph.D.

After reviewing the reports of Drs. Ahlfield and Canty and hearing plaintiff's testimony, the ALJ ordered a third psychological consultative examination to include psychometric testing of

---

psychological, social and occupational functioning, used to reflect the individual's need for treatment. Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)). A GAF score of 41-50 describes "serious symptoms" or "any serious impairment in social, occupational or social functioning," while scores of 51-60 describe "moderate symptoms." Id. Because GAF scores "are typically assessed in controlled, clinical sets that may differ from work environments in important respects," they are not determinative of disability. However, they are "a useful measurement" of functioning. Id.

the claimant's cognitive ability. AC 16 (ECF No. 13-3 at 17). Dr. Azevedo had access to plaintiff's very minimal mental health records[6] and the reports of both of the other appointed mental health examiners.

Dr. Azevedo found plaintiff to be cooperative and pleasant, open and spontaneous, a capable informant and historian; her effort on his testing protocols was adequate, and the results provided a fair estimate of her current cognitive abilities. AR 440-442 (ECF No. 13-9 at 4-6). After administering multiple tests, Dr. Azevedo concluded that plaintiff had a functional IQ of 71.[7] His diagnostic impression was PTSD and Generalized Anxiety Disorder. AR 444 (ECF No. 13-9 at 8). He found only one area of concern, which was that plaintiff denied a history of legal problems although the records he reviewed noted CPS issues with custody of her children. AR 443 (ECF No. 13-9 at 6).

In his Medical Source Statement of Ability to Do Work Related Activities (Mental), AR 446-447 (ECF No. 13-9 at 10-11), Dr. Azevedo found that plaintiff was mildly impaired in the areas of understanding and remembering simple instructions, carrying those instructions out, making judgment on simple decisions; and moderately impaired in understanding and remembering complex instructions, carrying those instructions out, making judgments on complex work-related decisions, interactions with the public, supervisors and co-workers and in responding to usual work situations and changes in the routine work setting. He found no marked or extreme impairments. Id. He assessed plaintiff a GAF score of 54. AR 445 (ECF No. 13-9 at 9).

////

---

[6] These consisted of the Progress Notes of the Sacramento Department of Health and Human Services, which diagnosed plaintiff with PTSD and gave her a GAF score of 55 on January 19, 2012, AR 306-306 (ECF No. 13-8 at 2-3), and another diagnosis from the Department's Primary Health Services Division on the same date, finding Depressive Disorder Other and Anxiety State Unspecified, AR 308-310 (ECF No. 13-8 at 4-6).

[7] As the ALJ noted, Dr. Azevedo did not give a diagnosis of borderline intellectual functioning, or explain his failure to do so, despite a qualifying IQ score. See AR 17 (ECF No. 13-3 at 18) (Decision); AR 443, 444 (ECF No. 13-9 at 7, 8) (report of Dr. Azevedo, noting IQ score falls in borderline range); compare AR 445 (ECF No. 13-9 at 9 (Azevedo diagnoses).

C. <u>The ALJ's Step Two Findings</u>

The ALJ's review of all three medical source statements was informed by his consideration of plaintiff's overall pattern of inconsistent statements. AR 15 (ECF No. 13-1 at 16) ("The claimant cannot keep her story straight when reporting her symptoms to various consultative examiners."). He specifically noted that plaintiff had made directly contradictory statements to the different examiners about when she stopped working, about custody of her children, about her activities of daily living, and about her smoking history. <u>Id.</u> She had also made representations to examiners about when she stopped working that the ALJ independently found to be false based on her earnings records. <u>Id.</u>

In light of this context and Dr. Ahlfield's expressed doubts about plaintiff's veracity, the ALJ assigned "little weight" to Dr. Ahlfield's functional assessment. AR 17 (ECF 13-3 at 18).

The ALJ gave "great weight" to Dr. Canty's opinion that plaintiff was malingering. AR 17 (ECF No. 13-3 at 18). The ALJ found this conclusion to be consistent with plaintiff's variable performance on the three exams, with Dr. Ahlfield's concerns about possible exaggeration, with the fact that plaintiff had never received ongoing mental health treatment, and with plaintiff's numerous inconsistent statements to the examiners and to the ALJ. <u>Id.</u>

The ALJ assigned "some weight" to Dr. Azevedo's opinion, AR 18 (ECF No. 13-9 at 19), and noted that his diagnosis was consistent with that of Dr. Ahlfield. AR 17 (ECF No. 13-3 at 18). However, the ALJ did not credit Dr. Azevedo's findings regarding functional limitations. In support of his conclusion in this regard, the ALJ noted that (1) Dr. Azevedo had opined that "the claimant is quite functional for greater than simple tasks;" (2) Dr. Azevedo's finding that plaintiff would have moderate difficulty interacting with others in the workplace was inconsistent with the evidence that plaintiff had in fact worked through 2012; and (3) Dr. Azevedo indicated that "although the claimant herself states she is unable to perform activities of daily living, he finds she has no psychometric impediment to doing such tasks." AR 17-18 (ECF No. 13-3 at 18-19).

After evaluating the examiners' opinions and effectively concluding that plaintiff was exaggerating her mental health symptoms, the ALJ considered the "Paragraph B" criteria. The ALJ found that plaintiff had no mental limitation in activities of daily living; mild limitation in

1 social functioning; mild limitation in concentration, persistence or pace; and no episodes of

2 decompensation which have been of extended duration. AR 18 (ECF No. 13-9 at 19).

3       The ALJ concluded that "[plaintiff's] medically determinable mental impairment[s] of

4 PTSD, depression, generalized anxiety disorder, and avoidant personality disorder do not cause

5 more than minimal limitation in the claimant's ability to perform basic mental work activities and

6 are therefore nonsevere." AR 18 (ECF No. 13-3 at 19).

7    D. Discussion

8       Plaintiff contends that the ALJ erred by failing to credit Dr. Azevedo's opinion and

9 accordingly find a severe mental impairment at Step Two. Because there were conflicting

10 medical opinions regarding the severity of plaintiff's mental impairment and whether she was

11 malingering, the ALJ was required to articulate "specific and legitimate reasons," supported by

12 substantial evidence, for rejecting the portions of Dr. Azevedo's opinion that he disregarded. See

13 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ did so here.

14       As set forth above, the ALJ specifically identified the evidence that supported his

15 conclusion regarding the weight to be given to Dr. Azevedo's opinion, and his ultimate

16 determination that plaintiff had not met her burden of proving a severe mental impairment: Dr.

17 Canty's diagnosis of malingering, which was supported by his exam findings; Dr. Ahlfield's

18 suspicion of exaggeration, which was supported by her exam findings; plaintiff's frequent and

19 extensive inconsistent statements regarding her symptoms, her activities of daily living, and the

20 historical facts regarding child custody, her work history, and her smoking, among other things;

21 and the lack of ongoing mental health treatment in light of allegedly severe mental debilitation.

22 This is "more than a scintilla" of evidence. Molina, 674 F.3d at 1111. The specific evidence

23 cited by the ALJ supports a reasonable conclusion that plaintiff was malingering, see Richardson,

24 42 U.S. at 401, and provides a legitimate reason to discount Dr. Azevedo's opinion, see Lester, 81

25 F.3d at 830..

26       Where the evidence is susceptible to more than one rational interpretation, the ALJ's

27 decision must be upheld. Andrews, 53 F.3d at 1039-40. The ALJ's conclusion here that plaintiff

28 was exaggerating her symptoms, and that Dr. Azevedo's opinion regarding the functional severity

of her symptoms was therefore based on unreliable information, constitutes a perfectly rational interpretation of the evidence. Accordingly, the ALJ's decision must be upheld.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No.24 ) is GRANTED; and
3. The Clerk of the Court shall enter judgment for defendant and close this case.

DATED: September 27, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE